Argued April 19, reversed October 22, 1929.

# LILLIAN NADSTANEK *v.* G. B. TRASK, Admin-
## ISTRATOR.

(281 Pac. 840.)

670

For appellant there was a brief and oral arguments by *Mr. Jas. G. Heltzel* and *Mr. Bert T. Ford.*

For respondent there was a brief over the names of *Mr. Geo. R. Duncan* and *Messrs. Carson & Carson,* with oral arguments by *Mr. Duncan* and *Mr. John H. Carson.*

COSHOW, C. J.—■ The parties to this litigation agree that under the common law the liability of a joint maker of a promissory note dies with his death before an action has been instituted to collect said joint obligation. Such was the holding in *McLaughlin* v. *Head,* 86 Or. 361 (168 Pac. 614, L. R. A. 1918B, 303); *Portland Trust Co.* v. *Havely,* 36 Or. 234, 242 et seq. (59 Pac. 466, 61 Pac. 346); Pomeroy's Code Remedies (5 ed.), § 203; 13 C. J. 574, 575, § 558. See, also, 13 C. J. 574. Plaintiff insists that the common law in that regard was repealed by Section 379, Or. L. The language in Sections 378 and 379 justify the argument advanced by plaintiff. Said sections are as follows:

"§ 378. What Causes of Action do not Survive. A cause of action arising out of an injury to the person dies with the person of either party, except as provided in section 380; but the provisions of this chapter shall not be construed so as to abate the action mentioned in section 39, or to defeat or prejudice the right of action given by section 34."

"§ 379. What Causes of Action do Survive. All other causes of action, by one person against another, whether arising on contract or otherwise, survive to the personal representatives of the former and against the personal representatives of the latter. Where the

cause of action survives as herein provided, the executors or administrators may maintain an action at law thereon against the party against whom the cause of action accrued, or after his death against his personal representatives.''

■ This language is clear and comprehensive. There is no ambiguity. *All* other causes of action survive to the personal representatives. The two sections are parts of the same act of the legislature and should be construed together. Section 378 specifies the causes of action which die with the person. Section 379 prescribes that all other causes of action survive to the personal representatives. The learned circuit judge, who presided at the trial of the action, was doubtless controlled by the ruling of this court in *McLaughlin* v. *Head,* above. No reference is made in the opinion in that case to either of Sections 378 or 379. An examination of the briefs in that case discloses that attorneys for neither plaintiff nor defendant referred to said sections. Both of the parties conceded that the common-law rule, under which the liability of a joint maker of a note dies with his death, was still in force in this state. I can conceive of no other purpose than the change of the common law in that regard by the enactment of said Sections 378 and 379. Said Section 379 embraces not only joint makers of a joint obligation but also other causes of action which would not survive under the common law. But the purpose of Section 379 was to designate the causes of actions which survive the person. If the common law were to remain in force, why should Sections 378, 379 and 380 have been enacted? The ruling in *McLaughlin* v. *Head* would doubtless have been different had the court's attention been directed to said Sections 378, 379 and 380.

The principle under consideration was quite thoroughly discussed in *Portland Trust Co.* v. *Havely*, above, beginning on page 242. The opinion is *per curiam* and among other things contains this language:

"The common-law rule that an action at law cannot be maintained against the personal representatives of a joint obligor is well settled."

The opinion then states that equity interposes to protect the creditor where the surviving obligor is insolvent as well as under some other conditions. In referring, however, to the obligation of a surety on a bond the opinion reads in page 243:

"But it is said: 'This presumption is never indulged in in the case of a mere surety, whose duty is measured alone by the legal force of the bond, and who is under no moral obligation whatever to pay the obligee, independent of his covenant, and consequently there is nothing on which to found an equity for the interposition of a court of chancery': *Pickersgill* v. *Lahens*, 82 U. S. (15 Wall.) 140, 144 [21 L. Ed. 119]."

The case of *Portland Trust Co.* v. *Havely*, above, involved the principle under discussion because H. W. Ross, surety for defendant Havely, died after the appeal was taken. Said H. W. Ross executed a joint undertaking. His attorney moved to prevent the entry of a judgment against Ross' personal representatives, relying on the principle that Ross' liability died with his person. Notwithstanding that Ross' obligation was that of a surety and notwithstanding the well established common-law principle that equity will not interpose to inflict the liability on the personal representatives of a deceased surety, judgment was entered against the personal representatives of said Ross. Why? Because the provision of our statute to the effect that

"the court is authorized to enter judgment against the surety, also, according to the nature and extent of his undertaking (that is to say, when the judgment of the court below is sustained, then and in that event judgment should be entered against his surety as well); and it is not possible that the legislature contemplated that any particular form of the undertaking should be necessary to give the court jurisdiction to enter judgment or decree against the surety. The judgment or decree to be rendered against the surety, within the contemplation of the act, is in its nature several—as much so as that against the principal, as the law requires the same judgment or decree to be entered against the surety, in like manner and with like effect as against the principal. * * There is no suit or action upon the bond, and the sole question is whether the surety has authorized the entry of judgment or decree against him, and the fact that the undertaking is in form joint, and not joint and several, or several, is not, as we believe, by legislative intendment, controlling. * * But we think that we have direct authority under the statute, regardless of the form of the undertaking in that respect, to enter the decree against the surety in like manner as it is entered against the principal. Such being the case, the form of the obligation being joint in tender does not relieve the estate from the obligation." *Portland Trust Co.* v. *Havely,* 36 Or. 242, 245, 246 (61 Pac. 346).

In other words, it is held in the Havely case that the provisions of the statute modified the common law in so far as the obligation of the personal representatives of a joint surety on an undertaking on appeal is concerned. No reference to survivorship whatever is made in the statute in that connection: Or. L., § 559, subd. 4. But Section 379, Or. L., expressly prescribes that all causes of action, except those mentioned in Section 378, survive. In *McLaughlin* v. *Head,* above, the attorneys for the defendant relied upon *Portland Trust Co.* v. *Havely,* above. But that case was de-

cided on the strength of the statute. (Or. L., § 559, subd. 4.) That statute has no application to the instant case.

■ ■ The attorneys for defendants claim that the common law with respect to the liability of the personal representatives of a deceased joint obligor had not been changed by statute in this state. I repeat, that such a construction would destroy the effect and force of said Sections 378 and 379. It cannot be denied that the subject matter is within the power of the legislature to enact. Said sections do not violate the fundamental law of the state. This court should not hesitate to correct an error which was caused by the failure on the part of counsel to call to the attention of the court in a former case a controlling statute. In neither *Portland Trust Co.* v. *Havely* nor *McLaughlin* v. *Head,* above, is Section 378 or 379 referred to. These are two sections, however, which name or describe the causes of action which die with the death of a person or survive against his personal representatives.

Reliance is placed upon *Rinker* v. *Hurd,* 69 Wash. 257. The court in that case held that the action did not survive against the estate of the wrongdoer. The case involved the wrongful death of a person. The personal representatives of the deceased person sued the personal representatives of the person who committed the homicide. He died before the action was instituted. Washington has no statute similar to Section 378, Or. L., but has a statute similar to Section 380, Or. L. The case of *Rinker* v. *Hurd,* above, is based on the earlier case of *Slauson* v. *Schwabacher Bros. & Co.,* 4 Wash. 783 (31 Pac. 329, 31 Am. St. Rep. 948). The first headnote in the last cited case reads as follows:

"Mere personal torts, which die with the party and do not survive to the personal representative, are not capable of passing by assignment."

The kind of a case referred to in that headnote is governed in our state by Sections 378 and 380, and is not governed by the provisions of Section 379, Or. L.

The Slauson action was commenced by plaintiff as assignee of A. Herramb. The cause of action was the conduct of the sheriff in levying an attachment on the stock of groceries belonging to A. Herramb in the suit of Schwabacher Bros. & Co. against him. The assignment of the cause of action was made for the benefit of the creditors of said Herramb and the attachment was alleged to be malicious. The complaint alleged perishable goods were destroyed by reason of said attachment. The trial court allowed proof of certain items and denied proof of others.

"But the plaintiff also alleged the payment of clerks and of rent during the time the attachment was in force; also loss of profits of business and sale of goods by assignee, attorney's fee in attachment proceedings, and injury to business credit and reputation. The court refused to allow proof of these losses. Judgment was rendered in favor of plaintiff for the first two items, from which said judgment he appealed, alleging error of the court in rejecting the proof offered.

"This case raises the question, what causes of action are assignable under the laws of this state?" *Slauson* v. *Schwabacher Bros. & Co.*, 4 Wash. 783, 784.

The court further held that the assignability of a chose in action depended upon survivorship. The court concludes in this connection with the following language:

"But broad as the language is, it only gives the assignee power to deal with property of the estate,

the estate which was assigned—so that the pertinent question is, what is property of an estate? Or, in other words, what is the estate? Is a man's reputation a part of his estate? Can it be said that an assignor's creditors or a decedent's administrators or executors have any financial interest in his reputation? It cannot be any part of the assets of the estate; it cannot be made available to pay the debts of the estate.''

Hill's Code (Wash.), Section 703, cited by the learned justice, is very similar to Section 380, Or L. Section 704, Hill's Code (Wash.), also cited by the learned justice, is identical with Section 379, Or. L. But Washington had no statute at the time the opinion in *Slauson* v. *Schwabacher Bros. & Co.*, above, was written corresponding to Section 378, Or. L. For that reason the Slauson case cannot be accepted as authority on the principles involved in the instant case. The principles governing the causes of action against which no proof was allowed in the Slauson case would be governed in this state by Section 378, Or. L.; consequently the decision in the Slauson case is sound law under the Oregon statutes, but is not applicable to the instant case because based upon a different statute. The items for which proof was not allowed in the Slauson case would not be provable in this state under said Section 378. The decision in *Slauson* v. *Schwabacher Bros. & Co.*, above, is in harmony with Sections 378–380, Or. L. What Washington courts accomplished by construction the Oregon legislature did by enactment.

█ It is true that the court held in the Slauson case that Hill's Code (Wash.), Section 704, must be construed with reference to causes of action which had survived and was not intending to announce the causes of action which should survive. But we cannot adopt that construction in this state in view of said Section

378. The purport of both sections seems to be a description of the causes of action which do not survive and those which do. In order to give effect, therefore, to said Section 379, we must necessarily hold that the plain language therein used means that *all* actions, whether arising on contract or otherwise, survive except as stated therein.

8 C. J. 851, Section 1111, states the principle thus:

"At common law, and except where the rule has been changed by statute, the executor or administrator of a deceased joint party to a bill or a note cannot be sued jointly with the survivor or survivors or severally and alone in a separate action, because the entire joint obligation devolved on the survivors and the personal representative of the last survivor. *The common-law rule has been quite generally changed by statute under which the personal representative may be sued jointly with the survivors.*"

This court in *Portland Trust* v. *Havely,* above, expressed the same principle as follows:

"That this doctrine (non-liability of the personal representatives of a deceased joint obligor) is well established, *aside from any innovation the code practice of the several states may have impressed upon it, or any modification thereof by statutory provisions,* there can be no cavil."

In the light of the statute and the difference in the state of facts between the instant case and the *Portland Trust Co.* v. *Havely* case, we do not deem the latter an authority in favor of defendant in the instant action. The court there did not discuss the proper construction of Sections 378 and 379. The court did hold in that opinion that if the joint obligor participated in the consideration for the note, his personal representatives were liable, notwithstanding the general rule relieving them of liability on the death of

their decedent. *Bostwick* v. *McEvoy,* 62 Cal. 496, 502, states the rule thus:

"It is urged that the estate of a deceased maker of a joint promissory note executed by two or more, can not be joined as defendant with the surviving debtor or debtors in an action on the note. But there was no demurrer to the complaint on the ground of misjoinder. Such an action, however, is maintainable in this state, but any judgment recovered against the administrator must be made payable *de bonis testatoris.*"

In *Hudelson et al.* v. *Armstrong et al.,* 70 Ind. 99, the defendant administrator of the estate of a deceased joint maker of a note pleaded in effect, in the second paragraph of his answer, that their testator, William S. Armstrong, executed the note in suit jointly with the said Willis Armstrong and as a surety and without any other consideration whatever; that said Willis received the entire consideration of the note; that the said William S. Armstrong died leaving his comaker of the note surviving him. The court sustained a general demurrer to that part of the answer. In the body of the opinion, page 104, the court says:

"We are of the opinion, therefore, that this latter section, for the purpose of supplying an omission in the code of 1862, may and ought to be regarded as continued in full force, under the provisions, above quoted, of said section 802 of the practice act. This conclusion will harmonize well with sections 782 and 783 of the practice act, and the construction given to those sections by this court, in the recent case of *McCoy* v. *Payne,* 68 Ind. 327.

"It follows of necessity, from what we have said, that the court erred, as we think, in overruling the appellants' demurrer to the second paragraph of the appellees' answer."

The excerpt discloses that the opinion is based upon the statutes of the state. There seems to be no difference of opinion in the authorities regarding the common-law rule. The headnote in *Redman* v. *Marvil, Admr.,* 73 Ind. 593, states the rule in that state as follows:

"Under section 783, 2 R. S. 1876, p. 309, the death of a surety on a joint promissory note does not discharge his estate from liability thereon."

■ To the same effect is *Steen* v. *Finley,* 25 Miss. 535, *Henderson* v. *Talbert,* 13 Miss. 109, *Burgoyne* v. *Ohio Life Ins. & Trust Co.,* 5 Ohio St. 586, and *Henderson* v. *Kissam,* 8 Tex. 46, 51. From these references it appears clearly that the principle under discussion is one to be regulated by the legislature. If the legislature has expressed its will and that will disagrees with the common law, the latter must give way. The case of *Susong* v. *Vaiden,* 10 S. C. 247 (30 Am. Rep. 50), is based upon a promissory note reading as follows:

"$100. One day after date we promise to pay A. E. Susong one hundred dollars for value received.
"February 10, 1874."

It is undoubtedly a joint obligation. The case reviews the former authorities in which South Carolina has refused to follow the old common-law principle releasing the estate of a deceased joint obligor on a joint promissory note. It was earnestly argued to that court that since the common-law rule obtained in most all other states the Supreme Court of South Carolina should overrule the earlier cases and adhere to the common-law doctrine. In replying to that argument the opinion reads:

"It seems to us that the rule contended for by the appellant (the party seeking to overrule the

former Carolina cases and to persuade the court to adopt the common law rule) had its origin in and rests entirely upon strictly technical doctrines incident to the common law rules of pleading, which are now no longer of force in this state. We are unable to perceive any good ground growing out of the nature of the rights and duties incident to a joint contract upon which it can rest, though we can readily perceive how it grew up, from the nature of the remedies provided, by the old rules of the pleading. By those rules it was not allowable to bring a joint action at law against a living obligor and the representatives of a deceased co-obligor, for the reason only that the judgment against the survivor would be *de bonis propriis,* while that against the representatives would be *de bonis testatoris,* and the common law did not tolerate a double judgment in one action. That this was purely technical, and that there was no inherent difficulty in the way, is conclusively shown by the practice of the Court of Equity, and by the practice under the Code of Procedure, under which such judgments have been and are in constant use. By another rule of that system of pleading it was required that where an action was brought upon a joint contract it was necessary that all the living co-contractors should be joined in the action.

"These rules lead legitimately to the conclusion that in case of the death of one of two or more joint contractors his representatives were absolutely discharged from any action at law. * * The fault of this reasoning, as it seems to us, is to be found in the fact that the distinction between being discharged from suit at law and being discharged from the obligation to perform the contract is lost sight of. There is no difficulty in understanding how, under the common law rules of pleading, the estate of the deceased co-obligor could not be pursued in an action at law, and how it could be properly said that such estate was discharged from *such action;* but it is not only difficult but absolutely impossible for us to understand how the death of the party can discharge his

estate from his obligation to fulfill his contract. The *remedy* at law may have been gone because of the want of proper machinery in that court to put it into practical operation, but the duty to perform the contract still remains—the obligation is not discharged. There is nothing in the nature of the rights and duties growing out of joint contracts which warrants the conclusion that the death of one of the co-contractors destroys the right or discharges the obligation which grows out of such contracts."

The court concludes its opinion by adhering to its former holding that the personal representatives of a comaker of a joint promissory note could be sued with the surviving obligors.

■ ■ This court in *Portland Trust Co.* v. *Havely,* above, expresses the same thought in page 244:

. "The rule grew up and has been established through the technicalities of common-law pleading, and upon the theory that a judgment could not be taken jointly against the estate of the deceased with the survivor upon the joint obligation. *That this was purely technical, and without any inherent difficulty in the way of the entry of such a judgment, is now absolutely apparent, as exemplified under the equity and modern code practice.*"

Our Code regulates the rendering and entering of judgments. Courts of law in this jurisdiction are not bound by the strict technical requirements of the common-law courts. Our Code provides that different judgments may be entered against different defendants in the same case: Or. L., §§ 180, 181. The reason having ceased for denying relief against the representatives of a deceased co-obligor on a joint promissory note, the rule itself is no longer in force. However that may be, we do not rest our decision on that reasoning alone.

It is argued, that because Section 379 embraces some torts as well as contracts, some other construction than the clear and plain meaning of the language used should be placed upon that section. We think we ought not to cross that bridge until we come to it. The case under consideration is clearly one of contract. It is an action involving property rights. Section 378, Or. L., designates the torts which do not survive. The torts referred to in Section 379 are torts which clearly involve property rights as distinguished from personal rights. This distinction is nicely drawn in the *Slauson* v. *Schwabacher Bros. & Co.* case, above. In that case the complaint involved both property and personal rights. Plaintiff was allowed to prove his property damages but not the damages arising from injury to his person, such as his reputation. That case supplies to the law of Washington the law stated in Section 378, Or. L. We think that we need not concern ourselves at this time about the cause of action arising otherwise than on contract.

Referring again to the *Slauson* v. *Schwabacher Bros. & Co.* case, above, it should be borne in mind that the question for decision in that case was the assignability of a claim. The question of survivorship was incidental thereto. It should also be borne in mind that Washington has no statute similar to Section 378, Or. L., defining causes of action which do not survive. The learned justice, who wrote the opinion in the Slauson case, above, stated the law substantially as it is stated in Sections 378 and 379, Or. L. The effect of that decision is that purely personal actions do not survive the death of the party. That is the effect of Section 378, Or. L. The State of Washington has squarely held in a number of opinions that liability of the co-obligor on a joint obligation survives his death and may be prosecuted against his personal repre-

sentatives. A very instructive case is *Brownfield* v. *Holland,* 63 Wash. 86 (114 Pac. 890). The opinion was written by Mr. Justice Gose and is a comprehensive treatment of the subject under consideration. We learn from this opinion that the provisions of the Washington Code governing the entry of judgments are very similar to the provisions of the Oregon Code on the same subject. It was contended in the *Brownfield* v. *Holland* case, as it is here, 114 Pac. 891:

"(1) That upon the death of one of two joint debtors the right of action is against the survivor only; (2) that the primary liability is upon the survivor, and that the respondent should have alleged and proven his insolvency as a condition precedent to a right of action against the personal representatives of the deceased; * * *"

The opinion further reads in page 892 as follows:

"If the reform procedure accomplished its purpose, it is obvious that the statutes to which we have referred render the common-law rules invoked on the first two contentions inapplicable to our procedure. Nor are we without precedents to direct us to this conclusion. In *Donnerberk* v. *Oppenheimer,* 15 Wash. 290 (46 Pac. 254), it was held that, where the surety dies and the principal survives, the surety's estate is not discharged. In *Megrath* v. *Gilmore,* 15 Wash. 558 (46 Pac. 1032), it was held that the liability of a joint debtor survives his death, and is enforceable against his estate. In *Spokane* v. *Costello,* 57 Wash. 183 (106 Pac. 764), we held that the administrator may be joined with the co-obligor of his intestate in a suit upon a bond executed by the intestate and his surety. In Bliss on Code Pleading (3 ed.), § 106, the author says that whether the personal representatives of a deceased joint obligor can be united as defendant with the survivor should depend upon the law of liability. In the footnote to this section it is said that the Code substitutes a direct proceeding for the 'awkwardness and indirection of the old.' After

discussing the provisions of the Code where the reform procedure has been adopted, Pomeroy in his work on Remedies (3 ed.), § 304, thus announces his conclusion: 'It is simply a palpable violation of these positive provisions to say that a creditor shall not maintain a legal action against the personal representatives of a deceased joint debtor, but shall be driven to an equitable suit, and that only in a certain contingency. It is a useless sacrifice to the *merest form.*"

The opinion holds the personal representatives of a deceased joint obligor on a bond liable in an action against them and the surviving obligors. It should be remembered in this connection that all the *forms* of pleadings have been abolished by our Code: Or. L., § 64; *McCarthy* v. *Frazier,* 97 Or. 493, 495 (192 Pac. 491). A very pertinent question to be propounded here is, if the legislature did not intend to change the common law regarding the survivorship of actions on joint obligations and other similar actions, why should it have enacted Sections 378–380, Or. L.? These sections are a part of the original Code. They appear to have been enacted at the same time and as a part of the same bill. They should be construed together. If they made no change in the practice of the common law, they are useless.

■ It should be borne in mind that the case of *Portland Trust Co.* v. *Havely,* above, did not involve a joint promissory note. It was concerned only with the joint undertaking on appeal. That case was decided by authority of Section 559, subdivision 4. It is said in *Portland Trust Co.* v. *Havely,* above, that a court of equity will never interpose to aid the obligee in such a bond to collect from the personal representatives of the deceased co-obligor. Notwithstanding that, this court in that case seized upon the authority conferred upon it in said Section 559, sub-

division 4, and entered judgment against the personal representatives of the surety on the joint undertaking on appeal. The statute did not in specific language authorize the court to enter judgment against the personal representatives of the surety. There is nothing in the statute relied on in that case directly abrogating the common-law rule or referring to survivorship on joint obligations. We think the ruling is correct and call attention to these considerations for the purpose of strengthening our conclusion that the old technical practice of the common law, relieving the estate of a deceased co-obligor on a joint obligation from liability, was intended to be abolished by the enactment of Sections 378, 379 and 380, Or. L. Sections 180 and 181, Or. L., have in view the same object in part.

*Portland Trust Co.* v. *Havely,* above, is not in conflict with this decision. *McLaughlin* v. *Head,* above, is overruled. The conclusion we have reached in the instant case is in harmony both with the letter and spirit of our Code, which was adopted for the purpose of abrogating the complex, cumbersome and numerous forms used in the practice of the common law. Nothing but the technical forms of the common law prevented an action from being prosecuted against both the personal representatives of deceased and surviving joint obligors in the same action. Such forms have been abrogated in this state: Or. L., § 64. Our Code designates the actions which do and which do not survive: Or. L., §§ 378–380. The case at bar survives under said Section 379.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

BELT and BEAN, JJ., concur.

BROWN, J., did not participate.